## Bensinger *versus* Wren et al., assignees.

1. The liability of a surety on an official bond cannot, without his consent, be extended or enlarged by the obligee or by operation of law.

2. Certain individuals organized a private banking company, and in their articles of association provided for procuring a charter " at as early a date as possible after the election of directors." The directors, however, subsequently merged the association into an existing corporation, chartered as an insurance and trust company, and continued to do a banking business under the charter of this company, although said charter expressly provided that no banking business should be transacted under it. The corporation became insolvent, and made an assignment for the benefit of its creditors. In an action by said assignees against the sureties on a bond given to the directors of the unincorporated association by its cashier, for his default while acting as cashier of the corporation: *Held*, that since the bond in suit was given to an unincorporated association organized as a private banking company, it became inoperative when that company ceased to do business; and therefore, that there could be no recovery in this action.

May 5th 1882.   Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1882, No. 252.

This was an action of debt brought May 25th 1876, by Thomas Wren and Jacob L. Bricker, assignees for the benefit of the creditors of The Citizen's Safe Deposit Bank of Mahanoy City, against Charles Bensinger et al., on a bond executed by the defendants to the directors of the " Citizens' Safe Deposit Bank," for the faithful performance by David Phillips of his duties as cashier.

On the trial, before Pershing, P. J., the following facts appeared : On October 19th 1871, certain citizens of Mahanoy City formed themselves into an association, under the name of " The Citizens' Safe Deposit Bank," for the purpose of engaging in the banking business, with all the rights and privileges of a chartered banking company. They had no charter, and the articles of association provided for carrying on a private banking business " until a charter can be procured. Said charter to be procured by the board of directors at as early a date as possible after their election." On October 23d 1871, a board of directors was chosen, who appointed David Philips cashier, and the association proceeded to do business in accordance with its articles.

By act of March 15th 1871, a corporation was organized called the " Enterprise Mutual Life Insurance and Trust Company." This company was authorized by its charter to transact the business of a life insurance and trust company, and to secure,

[Bensinger v. Wren.]

invest and dispose of its receipts for insurance and trust money ; but was expressly prohibited from exercising any banking privileges.

On November 22d 1871, the incorporators named in the act of March 15th, met, and elected as Directors of the Enterprise Mutual Life Insurance and Trust Company, the same persons, with one exception, who were already directors of the Citizens' Safe Deposit Bank.

The name of the trust company was then changed by the court to "The Citizens' Safe Deposit Bank of Mahanoy City." A committee thereupon reported to the directors of the association, to wit: the Citizens' Safe Deposit Bank, that they had procured a charter ; and from December 5th 1871 the banking business of said association was assumed to be done by the corporation, as a chartered banking company.

David Philips acted as cashier of the corporation, although its charter made no provision for a cashier, but did provide for the election of a treasurer, and the appointment of such "officers and agents" as the board of directors might deem necessary. The corporation continued to transact business until April 1875, and in September of the same year, being insolvent, made an assignment to Wren & Bricker, the plaintiffs, for the benefit of its creditors.

The bond upon which this suit was brought was given to the unincorporated banking company, and, after reciting that David Philips had been elected cashier of the banking company, continued, " and the conditions of this obligation are such that if the said David Philips shall honestly discharge the duties of cashier, and shall faithfully apply and account for all such moneys, . . . and deliver the same, on proper demand, to the order of the board of directors of the aforesaid bank, . . . then this obligation to be void."

The plaintiffs, as assignees of the Citizens' Safe Deposit Bank of Mahonoy City, claimed to recover from the sureties on this bond (two of whom were also directors of the corporation), for the default of Philips as cashier of the association, not as cashier of the unincorporated association, to whom the bond had been given.

At the trial, the defendants, claiming that the association never acquired a charter with banking privileges, submitted inter alia the following point :

" That the bond in suit was not given to any incorporated company, but to a private association of persons that organized as a private individual banking company, and which intended thereafter to acquire a charter with banking privileges, and there can be no recovery in this suit." Answer—refused.

Verdict and judgment for plaintiffs, in the penal sum of

[Bensinger *v.* Wren.]

$40,000, and damages assessed at $31,029.09 ; whereupon the defendants took this writ of error, assigning for error the refusal of their point as above.

*Hughes & Farquhar*, for plaintiffs in error.—The sureties upon the bond of a cashier of a voluntary association are not liable, after such voluntary association ceases to exist, for the defaults and misconduct of the same person as cashier of a company subsequently incorporated, and organized to take the place of said voluntary association, especially if the incorporated is not such a one as was contemplated by the members of the unincorporated association to succeed it. The liability of the surety is not to be extended by implication beyond the terms of his contract. Any change made in the contract between the principals and the obligee will release the surety : Miller *v.* Stewart, 9 Wheaton 702 ; McMicken *v.* Webb, 6 Howard 298 ; Brez *v.* Warner, 9 W. N. C. 45 ; Small *v.* Commonwealth, 8 Barr 101 ; Weston *v.* Barton, 4 Taunt. 673 ; Dance *v.* Girdler, 1 New Rep. (Bosanquet & Puller) 34.

*G. R. Kaercher* (with whom were *S. K. Kaercher* and *James Ryon*), for defendants in error.—There was no proof that the bond was given for or to any other corporation than the one whose assignees sued thereon. The directors and stock-holders were all the same, the business was carried on under the charters secured by the board of directors, which board included two of the sureties; dividends were declared by the bank and accepted by the stock-holders, several of whom were also sureties on the said bond. It is the well-settled law that contracts with a company not organized, but in view of organization, are binding : Edinboro' Academy *v.* Robinson, 1 Wright 210 ; Erie & W. Plank Road Co. *v.* Brown, 1 Casey 156 ; Bedford Railroad *v.* Bowser, 12 Wr. 29 ; Preston *v.* Liverpool, &c. Railroad, 7 Eng. Law and Eq. 124 ; Bells' Gap Railroad Company *v.* Christy, 29 P. F. S. 59.

Mr. Justice TRUNKEY delivered the opinion of the court October 5th 1882.

On the 19th day of October, 1871, certain citizens agreed to form themselves "into an association for the purpose of engaging in the banking business, with all the rights and privileges of a chartered banking company, said business to be carried on in the borough of Mahanoy City," in the name of The Citizens' Bank of Mahanoy City. The rules and regulations contained in this agreement were to be binding until the charter could be procured. "Said charter to be procured by the board of directors at as early a date as possible after their

election." "The stock of said banking company to be one hundred and fifty thousand dollars, to consist of fifteen hundred shares of one hundred dollars each, but no more than five hundred shares to be subscribed until further action of the board of directors." "Any stockholder having ten shares of stock in this company, shall be eligible as a director." "Said directors or a majority of them shall meet once in each week at the banking house for the purpose of transacting any and all business of said banking company. The object of this association shall be to transact all business which may come under the head of private banking companies."

In November 1867 a corporation was organized under an Act entitled: "An Act to incorporate the Enterprise Mutual Life Insurance and Trust Company," and the name was changed by the court to "The Safe Deposit Bank of Mahanoy City." This corporation was authorized to purchase and hold land and sell the same from time to time, the clear yearly value of its land not to exceed two thousand dollars; to insure the lives and health of its stock-holders, as well as of other persons; to receive and execute trusts, to make endowments, and to grant and purchase annuities; to receive moneys in trust or other property, and invest its capital stock and the moneys received in trust and for premium on assurances, in the funded debt of the United States, or of Pennsylvania, and in bonds and mortgages, notes and other personal securities; and to transact its business at such place in Pennsylvania as the directors may designate. Its capital stock, not to exceed one hundred thousand dollars, nor be less than fifty thousand dollars, was divided into shares of fifty dollars each, and a person owning five shares of said guaranty capital stock, was eligible to the office of director, secretary, treasurer or actuary. It was expressly prohibited the exercise of any banking privileges.

A glance at the articles of association reveals that the sole object was the transaction of banking business, and that no other business was in contemplation. The charter of the corporation authorized the business of life and health insurance, the performance of trust duties, with full powers for securing, investing and disposing of its receipts for insurance and trust moneys; but the exercise of banking business was prohibited. It is probably true that the corporation's place of business was at Mahanoy City, that being expressly or impliedly designated as the place by the directors; that it actually did a banking business, the very thing it had no right to do; and that it did little, if any, business which the charter authorized.

This action is upon the bond given to the unincorporated banking company, wherein is recited that David Philips had been elected cashier of the bank, and by reason of such election

[Bensinger *v.* Wren.]

will receive divers sums of money, funds and valuables, the property of the said bank, and " the conditions of this obligation are such, that if the said David Philips shall honestly discharge the duties of cashier, and shall faithfully apply and account for all such moneys, funds and valuables, and deliver the same on proper demand to the order of the board of directors of the aforesaid bank, or to the person or persons authorized to receive them, then this obligation to be void." The plaintiffs are assignees of the Citizens' Safe Deposit Bank of Mahanoy City, the corporation, and claim to recover of the sureties on that bond for default of the cashier of the corporation; not for any default of the cashier of the unincorporated company.

Philips acted as cashier of the corporation. The plaintiffs say that office was created under the provision of the charter which declares that the corporate powers " shall be exercised by a board of directors, and such officers and agents as they may appoint;" and that the directors shall annually elect a president, and a secretary, treasurer and actuary. A treasurer never was elected, unless the officer called cashier be considered the same.

It is not denied that the bond is valid for the purpose for which it was given ; but the denial is, that it was given to a life insurance and trust company. The plaintiffs contend that it was given in view of an organization under a charter, and that the defendants are liable as if it was executed after the incorporation. Whether the principle for which they contend applies to such a bond, we shall not stop to inquire,—the authorities they cite relate to other sorts of contracts. Nor will we remark the conduct of the corporation in unlawfully conducting a banking business, for that is unnecessary for the determination of the defendants' liability. It is not to be presumed that the parties to the bond, at the time of its execution, contemplated a corporation under a charter wholly foreign to banking. Though some of the sureties on the bond afterward actually engaged in procuring that charter and participated in the abuse, there is no evidence of their consent that the bond should be held for any other purpose than appears on its face. Knowledge and participation of that kind did not change the bond. The corporation which was contemplated, was for the purpose named in the articles of association.

Were it conceded that the corporation had banking powers, it also had large powers to transact other business, and the duties of its cashier were more, and different, than the duties of the cashier of a bank. The liability of the defendants depends on the fact whether they gave the bond to the plaintiff's assignor ; not upon the fact that the corporation did the thing forbidden, and left undone the privileges granted. A cashier or treasurer

[Bensinger *v.* Wren.]

for a company under the charter was not an officer of a banking concern. The bond was to secure the faithful performance of an officer of a bank.

Any alteration of a contract by the principal parties, without the assent of the surety, is fatal to its validity, as against the surety. Even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further. Any unauthorized variation in an agreement which a surety has signed, that may prejudice him, or may substitute an agreement different from that which he came into, discharges him : Miller *v.* Stewart, 9 Wheaton 680 ; Smith v. United States, 2 Wall. 219. It is an established rule of law that a party to a contract like that of these defendants shall not be bound beyond the extent of the engagement, which appears, from the terms of the contract and the nature of the transaction, to have been in his contemplation at the time of entering into it, and that his liability cannot, without his consent, be extended or enlarged either by the obligee or by operation of law. Hence, an increase of the capital stock of a bank was held to discharge the sureties of the cashier from liability for any misconduct or mistake of the cashier, committed after any part of the increased capital was paid into the bank : Grocer's Bank *v.* Kingman, 16 Gray 473.

This bond was actually determined when the unincorporated company ceased to do business, for that company was not incorporated as had been contemplated. Had it been so incorporated, perhaps a new bond would have been necessary ; this we do not decide. There was no new delivery to the corporation, and it is immaterial whether both parties, or either, supposed it continued as a security. Silence of the sureties did not mislead the directors. The sureties were not bound at their peril to give notice to the corporation ; it had the same knowledge as they.

We are of opinion that the defendant's first point should have been affirmed, namely, " That the bond in suit was not given to any incorporated company, but to a private association of persons that organized as a private individual banking company, and which intended thereafter to acquire a charter with banking privileges, and there can be no recovery in this suit."

Judgment reversed.