## Richard Lancaster *v.* William Barrett, Appellant.

*Principal and surety—Contract—Unauthorized change.*

Any unauthorized variation in an agreement which a surety has signed that may prejudice him, or may substitute an agreement different from that which he comes into, discharges him.

*Legal effect of admitted variation for the court alone.*

Where the evidence, which is practically undisputed, discloses the insertion of words which mean that an additional duty has been imposed on the principal, the legal effect is for the court alone, and requires that a verdict be directed for the surety defendant.

Argued Nov. 6, 1895.    Appeal, No. 19, Nov. T., 1895, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1892, No. 906.    Before RICE, P. J., WILLARD, BEAVER, REEDER, McCARTHY and ORLADY, JJ.    Reversed.

The action was assumpsit upon a bond given by Peter Smith Barrett as principal and William Barrett as surety to secure Richard Lancaster.    Damages were averred to the amount of $2,000.    Defendants pleaded *"non est factum."*    Verdict for plaintiff for $242.16.

The facts sufficiently appear in the opinion of the court.

*Error assigned,* inter alia, was as follows :

11. The court erred in refusing to affirm the latter portion of the defendant's fifth point, as follows : " Any alteration of a written instrument which affects or alters the rights or obligations of any of the parties to the written instrument, or which alters it to such an extent that it is no longer the contract which the parties signed, is material.    *Answer :* So much of that point I affirm ; the following portion I refuse : " The alter-

ation by inserting the words, 'sliding doorway between hallway and parlor,' and 'bath room' in the specifications which were part of the bond, was a material alteration of the instrument; and if the jury find that the surety had no notice of such alteration, he is relieved from any liability, and your verdict should be in his favor."

*J. Howard Morrison,* for defendant, appellant.—As to eleventh assignment of error: This assignment raises the question, Was not the interlineation in question a material alteration? Of course, if the jury is the judge of its materiality, there would be very little use of arguing upon this point; but if the court should pass upon the materiality, then it is most pertinent: Stephen v. Graham, 7 S. & R. 505; Neff v. Horner, 63 Pa. 327; see also Bensinger v. Wren, 100 Pa. 505; Miller v. Stark, 148 Pa. 164; Barclay v. Deckerhoof, 151 Pa. 374; Fisher v. King, 153 Pa. 3; McIntyre v. Velte, 153 Pa. 350; Nesbitt v. Turner, 155 Pa. 429; Martin v. Kline, 157 Pa. 473; Brez v. Warner, 9 W. N. 45. The latest case upon this subject is Gettysburg Bank v. Chisolm, 169 Pa. 564.

*Samuel Wakeling,* for appellee. The case is narrowed to these points:

1. Did the court err in submitting the matter of the interlineations in the contract to the jury, in place of charging direct that they were, as a matter of law, material alterations?

2. Did the court err in admitting in evidence the original penciled contract and plan, for the purpose of showing an accidental omission in the writing of the contract?

3. Did the court err in submitting to the jury the fact as to whether the alterations were made with the consent of William Barrett, the surety, and whether they were material?

While it may be the law that a material alteration of a contract without the consent of the surety will operate as a release, yet material alterations are, those of law for the court and those of fact for the jury. In this case the questions were those of fact. Was there a material alteration of the contract as originally made and intended which created new and unexpected liabilities on the part of the surety, and did the surety consent to the alterations?

These were matters of actual fact which alone could be prop-
erly determined by the jury, and as such the trial judge sub-
mitted the same, and in such submission, he did not err.

OPINION BY ORLADY, J., November 19, 1895:

On April 8, 1892, Peter S. Barrett, a carpenter and builder,
entered into an agreement in writing with Richard Lancaster
to "erect, build, set up and finish one brick messuage or tene-
ment with the appurtenances," "and compose the same with
such stone and brick, timber and other materials of the size,
kind and quality as particularly mentioned and set forth in the
accompanying specifications (which were drawn in detail and
attached to the agreement and signed by the principal parties),
for the sum of $1950."

At the same time Peter S. Barrett, as principal, and William
Barrett, as security, executed and delivered to Richard Lan-
caster a bond in the sum of $2,000, reciting: "Whereas, the
said Peter S. Barrett and Richard Lancaster did, on the day of
the date hereof, enter into an agreement for the erection and
construction of a certain brick messuage or tenement, with the
appurtenances, for the said Richard Lancaster, on a certain lot
or piece of ground, situate on the northeast side of Howorth
street, in Frankford, as therein particularly mentioned and re-
cited, as by reference to the said agreement and the terms and
conditions thereof will fully and at large appear." The agree-
ment, specifications and bond were prepared by a conveyancer
from a lead pencil memorandum, and William Barrett being
unable to read or write, the papers were read and explained to
him, when, in the presence of Peter S. Barrett and Richard
Lancaster, he signed the bond as surety. The following day,
the plaintiff (Lancaster) discovered that two items had been
omitted from the type written specifications attached to and
made part of the agreement.

He testifies: "I went down and saw Peter Barrett, and he
says, that is all right; I know that is on the plan; I said we
want it done right; so he wanted to put it on there and I would
not let him; I said, no; we will have it done right; we will go
up to Mr. Stearne; so I went up to Mr. Stearne, and Mr. Ed-
win Stearne would not put it there after the agreement was
signed; this was after the execution; then Edwin Stearne says,

no ; you better put it in there yourself, Pete, and it will be better ; and he put it in there himself."

The words interlined by Peter S. Barrett were "sliding doors between hall and parlor," and "bath room." The lead pencil sketch was not in any way a part of the agreement. William Barrett, the surety, makes defense to this action on the bond, claiming that the interlineations were material and unauthorized by him.

On trial in the court below two questions were submitted to the jury :

1. Was it a material alteration ?

2. Was it made with the knowledge and consent of William Barrett, the surety ?

The rights of the surety under the evidence were matter of law and not for the jury. There was no conflict of testimony ; every essential fact was found in plaintiff's testimony. The authorities are clear. In Craighead v. McLoney, 99 Pa. 211, the court say : " It is evident that any tampering with the instrument which imposes upon the party a burden or a peril which he would not else have incurred, is an injury to him, and therefore material."

In Bensinger v. Wren, 100 Pa. 500, the court declare any alteration of a contract by the principal parties, without the assent of the surety, is fatal to its validity as against the surety. Even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation, and is bound no further. Any unauthorized variation in an agreement which a surety has signed, that may prejudice him, or may substitute an agreement different from that which he came into, discharges him.

The inserted words meant that an additional duty was imposed upon the contractor.

The plaintiff regarded them of importance, in requiring their addition, to secure to him the use and advantage of something not previously exacted of Peter S. Barrett. After their insertion, the contractor was required to make and place two sliding doors and additional wainscoting in the bath room, not mentioned in the agreement as signed by and explained to the surety. Inspection of the paper showed the contract was materially changed, and the principal parties admitted it was designedly done for the purpose expressed by the words.

The legal effect, under this evidence, was for the court alone; and there being nothing in the case, showing knowledge or assent of William Barrett, the surety, to the material alteration of the contract as signed by him, the jury should have been directed to return a verdict in his favor, under the principles stated in the charge of the learned court and authorities herein noted.

The eleventh assignment of error is sustained, which sufficiently disposes of the case without considering the others.

Judgment reversed.