December 3, 1906.

————o————

No. 3962.

(Court of Appeal, Parish of Orleans.)

FRENCH MARKET ICE MANUFACTURING CO. vs. ELIAS LANDAUER, RECEIVER, AND THE FIDELITY AND DEPOSIT COMPANY, OF MARYLAND.

1. Where a contract recites that the work must be completed within ninety days, and further stipulates that the pipes are guaranteed **not to leak for a period of one year**, and the bond contains the clause to the effect that, "If any suits at law or proceedings in equity are brought against the surety to recover any claim hereunder, the same must be instituted within six months after the completion of the work specified in the contract.

HELD: The prescription of six months specified in the bond will begin to run not from the completion of the work (expiration of ninety days), but from the expiration of the year after completion.

Appeal from Civil District Court, Divisions "E. & B."

John A. Woodville, for Plaintiff and Appellee.

P. M. Milner, for Defendant and Appellant.

H. L. Lazarus, for Defendant.

ESTOPINAL, J. Plaintiff prays for judgment against the defendant to recover on a bond on which defendant became surety. Plaintiff's action is based upon the allegation "that on or about the 25th day of October, 1902, it entered into a contract with the

80

Schaeffer-Gaiennie Company, Limited, for the construction of a pipe from plaintiff's ice plant on Chartres street to the Mississippi River, for the price and sum of two thousand, five hundred dollars ($2,500.00), and that one of the clauses of the contract was to the effect that they guaranteed that the pipe would remain tight for a period of one year from the completion of the work; that the defendant became the surety for the faithful performance of all the stipulations and agreements made by the Schaeffer-Gaienne Company, Limited, under their contract with plain· tiff.

Plaintiff avers that before the work under the contract was completed, the Schaeffer-Gaiennie Company, Limited, was placed in the hands of a Receiver, and that said Receiver completed the work and received the balance of the contract price agreed to be paid the Schaeffer-Gaiennie Company, Limited.

Plaintiff then avers that the work, as performed by the Schaeffer-Gaiennie Company, Limited, and the Receiver of said company, Elias Landauer, was not done according to the contract under which they were bound; that their agreement to keep the pipes tight for a period of one year was not complied with; that the Receiver informed the Court, which appointed him, of this undisputed fact, and secured an order of Court authorizing him to make the necessary repairs, so as to conform to the contract with plaintiff, but that the said repairs by the Receiver were unskillfully done, and that the pipes continued to leak, causing great loss and damage to it; that plaintiff took legal proceedings to compel the Receiver to carry out his contract, and that the Court ordered it to advertise for bids to have the work done in accordance with the original contract; that it accordingly advertised for bids, and entered into a contract with John S. Kiely, the lowest bidder, to do the work for the price and sum of one thousand, five hundred dollars( $1,500.00) ; that the work was done by said Kiely, for which he has been paid, and that plaintiff should recover from defendant and Landauer, the Receiver.

The latter first filed an exception of vagueness, and then answered, pleading the general issue.

Defendant, the Fidelity and Deposit Company of Maryland, by way of answer, filed a general denial, admitting, however, that

on the 25th of October, 1902, it signed as surety the bond of Schaeffer-Gaiennie Company, Limited, for one thousand dollars ($1000.00), conditioned for the carrying out of certain work undertaken according to prescribed specifications; that the bond was subject to special warranties made conditions precedent to any right of action on the part of plaintiff; that after the perfection and signing of the *contract* and *bond,* plaintiff, without the knowledge or consent of respondent, changed and altered the contract made with Schaeffer-Gaiennie Company, Limited, and made other specifications for the work required, which action on the part of plaintiff vitiated its bond; that the original contract, which it became surety for, was to have been completed in ninety days, and that the work was so completed ninety days.

Defendant in his answer further avers, that Schaeffer-Gaiennie Company, Limited, went into the hands of a Receiver, and that the work was completed by the Receiver and accepted by the plaintiff, and that without the consent and knowledge of defendant, plaintiff paid to the receiver the balance of the contract price; that it was not, under the contract bond, liable for one year's guarantee, its obligation being for the completion of the work within ninety days and according to the original specifications.

Defendant avers that plaintiff, having discovered defects in the work after the payment to the Receiver of one thousand, five hundred dollars ($1,500.00), balance of contract price, should have taken steps to have said fund retained in the hands of the Receiver until the latter had completed the contract according to its terms.

Defendant makes the further averment that the plaintiff arbitrarily advertised the contract for the repair of the original work and made "different and other specifications from the original contract; that the work subsequently done and for which it is attempted to hold defendant liable, was done according to new and different specifications from the original contract, which prevents plaintiff from having any legal cause of action against defendant," and lastly, defendant pleads the prescription of six months under the conditions of the bond on which it became surety.

Judgment below was for plaintiff and against defendant, con-

demning the latter to pay one thousand dollars ($1000.00), from which judgment it prosecutes this appeal.

At the outset we might lay down the proposition that the bond and the contract must be construed together, in other words, that the bond, as we find it here, is not intended to cover certain conditions in the contract and to be inoperative and without force as to certain other conditions, notwithstanding the broad and far reaching terms of the bond.

Again, before discussing the real issues in the cause it may be well to eliminate what to us, appears to be untenable defenses set up by the defendant company. We do not think there is any merit in the defense to the effect that "plaintiff should have taken steps, upon discovering defects in the contract work and after paying the balance on the contract price to the Receiver, to have had the same retained in the hands of the Receiver." We do not think that plaintiff's rights were at all prejudiced by its failure to assert a claim against the Receiver for the balance paid the latter by it.

The Surety Company, defendant herein, had been made familiar with the condition of the pipes, and the very unsatisfactory condition of the job as turned over to plaintiff, the latter having written the Fidelity and Deposit Company on January 12th, to this effect:

"We are informed by our engineer that the pipes are leaking from levee to factory, and, therefore, we now call on you to repair same forthwith as per your guarantee."

The letter further recites that this notice is given in accordance with the terms of the bond given.

The record discloses that not only did the Fidelity Company remain silent and inactive, taking no steps to protect itself while there were yet funds in the hands of the Receiver, paid the latter by plaintiff, but the defendant Surety Company made no reply to plaintiff's letter of notification until some time in the month of March (12th, 1904).

The Surety Company then wrote (March 12th, 1904), to plaintiff, saying:

"They (Receiver et als) claim that all satisfactory repairs were made upon your (Surety Company's) former request."

83

This would indicate that though the defendant Surety Company had not acknowledged receipt of letters and notices from plaintiff, it had, nevertheless, been active in its efforts to get the Receiver to put the pipes in the condition stipulated under the contract.

To permit the surety on a bond of the character existing here to escape liability on the pretext that the plaintiff should have sought relief in the Courts against the Receiver while the surety remained passively by, would be to make useless the purpose of the obligation assumed by the surety. This cannot be permitted.

Defendant Surety Company urges that they were not given timely notice of the defects in the work or else the defects would have been remedied while the Schaeffer-Gaiennie Company, Limited, went into the hands of a Receiver, and that about the same time the work done by this company was discovered to be defective.

Whether or not the Fidelity Company of Maryland, was notified at this early date is not affirmatively shown, but the Receiver, it appears, went into Court and secured the necessary order from the Court to repair the defects.

When plaintiff realized the inability of the Receiver to make the necessary and required repairs, it then notified the Fidelity & Deposit Company, asking it to undertake the work. This notice, though coming as late as eleven months or thereabouts, after the completion of the contract, was timely. The Surety Company instead of undertaking the work of repair, endeavored to point out to plaintiff how it should act to secure itself from loss.

Plaintiff, who is shown to have suffered loss and to have been greatly inconveniened by loss of time and inadequate water supply, getting no attention, answer or relief, from the Surety Company, then applied to the Court, and obtained permission to advertise for bids for the repair of the pipes. The work was let to and undertaken by a contractor for the price and sum of one thousand five hundred dollars ($1,500.00).

The defendant Surety Company complained that:

1st. That the work should not have been let.

2nd. That the specifications for the repair work under this contract were different from the specifications in the original contract, and,

3rd. That the cost one thousand, five hundred dollars ($1,500).00), was unnecessary and excessive.

We are of the opinion that plaintiff had the undoubted right, acting as it did, under the orders of the Court, to advertise for bids for the repair work.

There is abundant proof that the only effective manner in which these repairs could be properly made was to remove the pipes and relay them in some other way than they were originally laid.

The best evidence of the imperfect work under the original contract, and perfect work under the last, or contested repair work, is that the former always leaked and could not be repaired, while the latter has stood all the demands made upon it without springing a single leak.

From our appreciation of the evidence, we must naturally conclude that the work originally done by Schaeffer-Gaiennie Company, Limited, was improperly and unskillfully done, and that it was not possible to remedy the same except by taking it up and relaying the pipes as was finally done by plaintiff.

The same material, pipes, etc., was used by the last contractor, and there was in consequence a difference of one thousand dollars ($1000) between the original contract price of two thousand, five hundred dollars ($2,500.00) and the price of last repairs, one thousand, five hundred dollars ($1,500.00). This does not appear to be exorbitant, and it does not lie in the mouth of defendant company to so claim, in view of the fact that it was given every opportunity to have the work done under its own supervision and direction.

To now contend that it was possible to have the work done satisfactorily for one hundred and fifty ($150) or two hundred dollars ($200.00), is not deserving of serious consideration.

But the defendant claims it is not liable as surety on the bond beyond ninety days, within which the work was completed, as specified in the contract.

The bond and the contract must be read together. The con-

tract specifies that the work must be completed within ninety days, but there is a guarantee in the contract that the pipe would remain tight for a period of one year from the completion of the work.

Now, the defendant became surety for the *faithful performance of all the stipulations and agreements* made by the Schaeffer-Gaiennie Company, Limited.

Would it be reasonable to hold that the liability of the Surety Company, under the terms of the bond, would be extinguished when the work was finished, within ninety days, and be absolved from further liability, though the work, under the contract, was guaranteed for one year from its completion by the contractor? We think not. The life of the bond was not shorter than that of the contract. Both instruments must be construed together and are inseparable.

We cannot therefore agree with counsel for defendant that "it is very questionable whether the bond given guaranteed this obligation (keeping pipes tight for one year), as it only in terms guaranteed the completion of the laying of the pipes." We do not think it to be at all questionable.

Defendant urges the prescription of six months, as stipulated in the bond, after which no action can lie on the bond, which stipulates as follows:

"If any suits at law or proceedings in equity are brought against said surety to recover any claim hereunder, the same *must be instituted within six months after completion of the work* specified in said contract."

Were we to hold that the work was completed on the 25th of January, 1903, as contended by defendant, certainly the prescription of six months interposed by it must prevail, but having concluded that the work was guaranteed under the terms of the bond, for one year after the pipes had been laid, it is not only consistent, but it is but fair, and just, and reasonable, to hold that the work cannot be considered as complete and finished as long as the year has not expired.

Prescription must begin to run from the expiration of one year after the completion of the contract work. This appears to be a reasonable interpretation of the contract and bond.

86

We do not think that there has been any breach of warranty on the part of plaintiff, and defendant alone appears to be responsible for its present misfortune.

We do not think there is error in the judgment appealed from, and it is hereby affirmed.

June 18, 1906.

Rehearing granted Nov. 5, 1906.

## ON REHEARING.

1. The surety is relieved from liability by a substantial change in the plans made by the obligee of the bond without his knowledge and consent.
2. The surety is not bound beyond the extent of his engagement which appears from the very terms of the contract and his liability cannot, without his consent, be extended, enlarged or varied either by the obligee of the bond or operation of law.

ESTOPINAL, J.   Under stress of well established principles and authorities we feel constrained to reconsider our original opinion and decree herein

In the application for a rehearing the defendant surety company urges first, that we erred in not sustaining the plea of prescription urged as a defense in the original hearing. The position assumed by the defendant that it was not liable beyond and could not be sued after the expiration of six months after the completion of the work, we repeat, is without merit under our appreciation of the tenor and purport of the bond.   As said in our original opinion, "the bond and contract must be read together.   The contract specifies that the work must be completed within ninety days, *but there is a guarantee in the contract that the pipe would remain tight for a period of one year from the completion of the work.*"

Now the defendant became surety for the faithful performance *of all the stipulations* and *agreements* made by the Schaeffer-Gaiennie Company, Ltd. with the plaintiff.   Would it be reasonable to pretend, and for any Court to hold, that the liability of the surety under the terms of the bond would be extinguished when the 'work was finished (i. e. within 90 days) and be absolved from further liability though the work under the contract was guaranteed for one year from its com-

pletion. We think not. The life of the bond was not shorter than that of the contract.

Both instruments must be read and construed together and are inseparable. We did not hold in our original opinion (as the defendant contends) "that prescription ran from end of further period when repairs could be made," but what we did hold is that the contract was binding on the contractor to maintain the pipes in good and tight condition for one year after completion, and the surety company, obligated itself to stand by and see that these conditions were carried out by the contractor, and the latter defaulting, said surety stood ready to make good for said default up to one thousand dollars.

The maintenance of the pipes in good condition for one year after their laying or installation, constituted, under our view of the matter, the *completion of the work*. Up to this point the bond furnished by the defendant surety company has in no way become divorced from the contractor's obligation. The surety was liable to be sued within six months thereafter. To specify in the contract a clause binding the contractor for a stated period is tantamount to imposing the same conditions, as to time, on the surety, unless the contrary is specially stipulated in the bond. We therefore adhere to the opinion that the prescription of six months specified in the bond begins to run. not from the completion of the work, (expiration of ninety days) but from the expiration of one year thereafter.

The serious ground urged for a reversal of our former decree is that the surety "has been condemned to pay, the cost of carrying out an entirely, new and different contract than that bonded."

In our original opinion we assumed that because defend_ant, surety, remained inactive, took no steps to repair leaks when called upon to do so, that it was then the right and privilege of the plaintiff to make the repairs, and in so doing to exercise its discretion, and if it deemed necessary, to take up and relay the pipes, in a word to do anything and make the repairs in any way that would secure to it the service of the pipes. This assumption we are now convinced is. not sustained by law. The bond was intended to guarantee the contract according to written specifications.

The contractor having failed to repair certain leaks which

88

occurred in the pipes within the year the obligation became the surety's. The surety failing to do the work, manifestly it was plaintiff's privilege to have the work done at the surety's expense, conditional however, that the work should be done in *accordance with the written specifications of the contract bonded by the surety*. Defendant's averments that the plaintiff arbitrarily advertised the contract for the repair of the original work and made different and other specifications from the original contract, and that the new work was done according to new and different specifications from the original contract all without notice to the surety, are fully sustained by the record, and not seriously denied by plaintiff.

It cannot avail plaintiff to urge that it acted in obedience to an order of the District Court then having jurisdiction and control in the matter of the Receivership of the Schaeffer-Gaiennie Co., Ltd. No action or order of the lower Court could in any way affect the well defined rights of the defendant surety company. The District Court might properly give plaintiff authority to do the work in which the Receivership was involved but we take it that the Court intended the work to be done according to the original specifications. If the order was not express in terms it must have been implied. The good faith of plaintiff is not questioned but there was an evident mistake on its part as to its rights.

The record shows that the pipes laid by the original contractor were defective in that they sprung several leaks; that the contractor and the surety both refusing or failing to have the repairs made, they were undertaken by the plaintiff under the original specifications. It is in evidence that these repairs were successfully completed, but, that intentionally or otherwise, plaintiff's engineer put on a heavy back pressure, and said pipes being suction pipes used to bring water from the river, could not, nor were they intended to, resist such *back pressure*, and that in consequence, the leaks started anew and increased in number. The surety's liability existed up to this moment and no longer, because it was then that plaintiff abandoned all efforts or attempts to further repair the pipes under the old specifications, but instead, undertook to take up and relay the pipes under *entirely new and different specifications*. Under the uniform jurisprudence of this country, a surety is relieved from liability by a substantial change in the plans made by the obligee of the bond without his knowledge. Man-

89

ifestly, if the surety had undertaken the work of repairs, it should have done so according to the specifications of the contract which it guaranteed. Plaintiff's right to recover the cost of repairs, made by it in default of the surety, had these repairs, no matter how extensive, been made under and according to the specifications of the identical contract bonded by the surety, is undoubted, but plaintiff was without legal right to make, without notice to the surety and the latters, a new contract, containing different conditions and specifications. This cannot bind the surety Cross vs. Allen 141 U. S. 537. Bessinger vs. Wren 100 Pa. 505.

"The surety is sponsor for one contract, and but one, and no one has the right to make another for him." Fellows vs. Prentiss 3 Denio 521. Ward vs. Stahl 81 N. Y. 406. Barnes vs. Barrow 61 N. Y. 486. Nat. M. Banking Ass'n. vs. Conklin 90 N. Y. 116.

It cannot avail plaintiff to say that the repair work could not have been done under the original specifications, hence the change in these. This was through no fault of the surety's. The specifications were not the surety's but were the comfection of the plaintiff.

"A new contract containing specifications materially different from the agreement to which the undertaking of the suretyship related, relieved the surety from liability for the obvious reason that the identical contract to which alone his obligation attached had ceased to exist." 131 Federal Reporter 208.

We have not the two contracts and specifications before us, but we find from the testimony and particularly from that of a Mr. Keily, a plumber by trade and the contractor who took up and re-installed the pipes under the new specifications, that these were in many material particulars different from the original contract.

We are satisfied that there was such a *variance* in the two sets of specifications as to absolve the surety from all liability for the cost of the new work.

We do not however, think that the surety company (defendant) can escape liability for its default up to the time of the doing of the new work. The pipes as laid by the original contractor were guaranteed for one year. They leaked within that time. The contractor, Schaeffer-Gaiennie Co., Ltd., or

the Receiver of the Company did nothing to correct the trouble and the surety was equally inactive. Plaintiff attempted to have the leaks stopped, and the persons employed to do the work testify that the leaks had been stopped. but the improper action of the plaintiff's engineer destroyed their work. This repair work was done under the contract bonded by the defendant surety company. The record is silent as to the cost of this repair work. If the cost were shown we would tax the defendant with it, but in the absence of this information we deem it proper, just and equitable that the surety should be made to contribute towards the work of repair prior to making of the new contract. A reasonable approximation of the cost is found in the record. We have carefully read the testimony of Mr. Keily who impresses us as being a competent mechanic and taking it that at the time he undertook to take up and relay the pipes he discovered only two very serious leaks, we are disposed to adopt his estimate of the cost of repairing these defects, as a fair approximation. In reply to a question Mr. Keily says, "I wouldn't do it for less than one hundred dollars a piece," or two hundred dollars for the repair of the two leaky joints. Under this reasoning we think the defendant is liable to the extent of two hundred dollars.

It is therefore ordered, adjudged and decreed that our former decree herein be annulled and set aside; and it is now ordered adjudged that the judgment of the District Court be and the same is hereby amended so as to reduce the judgment of the plaintiff against the defendant from one thousand ($1000.00) dollars to two hundred ($200.00) dollars, costs of appeal to be paid by plaintiff and appellee, those of the lower Court by the defendant and appellant.