## Moon Motel, Inc. v. Sun Insurance Co. of New York

*David F. Alpern* and *J. B. Alpern*, for plaintiff.

*Theodore O. Struk, Dickie, McCamey, Chilcote & Robinson,* for defendant.

LEWIS, J., March 16, 1964. — This matter is before the court on the preliminary objections of defendant in the form of a motion to strike off the complaint and a demurrer to the complaint.

Plaintiff has filed an amended complaint which has effectively cured the formal defects in pleading complained of in defendant's motion to strike off the complaint. It is thus necessary to consider only the question raised by the demurrer.

In 1960, plaintiff and Miller-Heck Company entered into a construction contract for the erection of a "fifty-four unit motel with restaurant and cocktail lounge." Defendant issued and delivered a performance bond and a labor and material bond to cover the contract.

The construction contract contained a section labeled "Changes in the work," which provided that "the principal may . . . at any time during the progress of the work, require any deviation from, addition to, or omission, in the Drawings and Specifications, and the respective Separate Contractor shall, and does agree to make such changes of whatever character they may be, as part of this Contract; and in case such changes make the work more or less expensive than that originally required, a proportionate addition or deduction shall be made to or from the Contract price herein agreed to be paid."

The section of the contract captioned "Description of project" states:

"The project consists of two buildings containing fifty-four (54) motel rooms, lobby, restaurant, cocktail lounge, manager's apartment, with the accessory kitchen, storage and utility spaces."

Both the performance bond and the labor and material payment bond issued by defendant incorporate by reference the contract for the construction of the motel, "together with the Documents therein described as the Contract Documents."

Plaintiff alleges that pursuant to the contract and "written modification thereto," Miller-Heck undertook to construct the motel, restaurant, cocktail lounge, *and* an Esso Service Center. According to plaintiff's brief, the agreement for the construction of the service center was entered into under the provisions of the change order section of the original contract, and was thereby made a part of that contract. In its complaint, plaintiff alleges that because of defective work and nonper-

formance of the contract and the "written modification thereto," certain sums are due plaintiff from defendant surety.

Defendant filed a demurrer as to all claims arising out of nonperformance or defective work in connection with the construction of the service center. In invoking the demurrer, defendant has admitted all relevant facts sufficiently pleaded, and all inferences fairly deducible therefrom. Defendant admitted, therefore, for the purpose of the demurrer, that an agreement to construct the service center existed between plaintiff and Miller-Heck and that because of defective work and nonperformance of this agreement, plaintiff has a claim against Miller-Heck. Defendant maintains, however, that, as a matter of law, it is not liable as surety for this claim.

The liability of a surety in situations of this kind was clearly and succinctly stated by the court in Koch v. Moyer and Burkhart, 103 Pa. Superior Ct. 271, 273:

"The rule is well established that an alteration of a contract by the principal parties, without the assent of the surety is fatal to its enforcement against the surety: Bensinger v. Wren, 100 Pa. 500, 505; any unauthorized variation in an agreement which a surety has signed that may prejudice him, or may substitute an agreement different from that which he entered into, discharges him: Lancaster v. Barrett, 1 Pa. Superior Ct. 9. But the rule has no application to a building contract which by its terms, contemplates or expressly provides for changes: Blauvelt v. Kemon, 196 Pa. 128; Comth. B. & L. Assn. v. Steele, 23 Pa. Superior Ct. 19 . . ."

It is, of course, only logical to assume that implied assent by a surety to modifications made under a change order section of a construction contract should apply only to those changes which might reasonably

have been contemplated. See Stearns, Law of Suretyship, §6.8, p. 121.

The difficulty comes in arriving at a workable test to be applied in determining whether any given change is or is not so material that the surety is to be released.

Pennsylvania case law is meager in this area and fails to establish any definite standard for such a determination. One of the more recent cases is Hartford Accident and Indemnity Co. v. Flanaghan, 73 D. & C. 506 (1950), which involved a construction subcontract for plumbing and sewage work on four "boot-camps" within a naval training station. This subcontract contained the usual change order provision. Defendant, the subcontractor, secured a surety bond from plaintiff, covering the original contract and any "duly authorized modifications" of it. After finishing the job specified in the subcontract, defendant successfully bid on and performed similar work, in and around the training station area but not a part of the original subcontract provisions.

In determining that the additional work was covered by the original bond, the court noted that since the additional work was "for the construction of the same great object, viz. the national training camp, it is reasonable to regard the modifications as mere changes of the amount and of the exact locus of the physical service to be rendered by defendant, without any substantial alteration of the fundamental purpose . . . of the subcontract. . . .": 73 D. & C. 506, 510.

That the Flanaghan case, supra, does not, however, offer any clear standard to aid in the determination of the present question is emphasized by the fact that both the plaintiff and the defendant cite it as support for their respective positions.

More pertinent, we feel, is the case of Miller v. Eccles, in which the court noted that the question of whether the modifications in a construction contract

were covered by the original contract so as to bind a surety was "fairly submitted to the jury under proper instructions.": 155 Pa. 36, 38 (1893).

In the present situation, the plaintiff argues that a service center is an integral part of a motel and thus a reasonable addition to the original contract. Defendant maintains that such is beyond the scope of the change order provision and cannot be engrafted upon the original contract. It is not sufficiently clear, however, that the service center was such a deviation from the original contract that the defendant is to be released from liability as a matter of law. For this reason, defendant's preliminary objection in the form of a demurrer should be dismissed, and defendant should be granted 20 days in which to file an answer.

### ORDER OF COURT

And now, to wit, March 16, 1964, for the reasons set forth in the within opinion, it is ordered that defendant's preliminary objection in the form of a demurrer be and the same is hereby dismissed, and defendant is granted 20 days in which to file an answer.